IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CMFG LIFE INSURANCE COMPANY, CUMIS INSURANCE SOCIETY, INC., and MEMBERS LIFE INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> JPMORGAN SECURITIES, LLC, BEAR, STEARNS & CO. (n/k/a JPMORGAN SECURITIES, LLC), WAMU CAPITAL CORP., and JPMORGAN CHASE BANK, N.A. (as successor-in-interest to WAMU CAPITAL CORP. and WASHINGTON MUTUAL BANK), <br><br> Defendants. | Case No. 13-cv-00580 |

**CUNA MUTUAL'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR LEAVE TO AMEND ITS COMPLAINT**

CUNA Mutual[1] seeks leave to amend its complaint specifically to add an allegation of *intentional* misrepresentation. The detailed facts CUNA Mutual pleaded in the complaint already support such a claim—the evidence demonstrating the JP Morgan Defendants' knowledge of the shoddy loans included as backing for securities sold to CUNA Mutual is well catalogued in CUNA Mutual's 154-page complaint—and CUNA Mutual seeks to provide additional allegations in its amended complaint that further demonstrate fraud.[2]

---

[1] "CUNA Mutual" refers collectively to three Plaintiffs in the underlying case: CMFG Life Insurance Company, CUMIS Insurance Society, Inc., and MEMBERS Life Insurance Company.

[2] In its Response to the Court's 7/2/14 Order, CUNA Mutual noted that it would "inform the Court of its decision whether to amend by July 30, 2014." ECF No. 39, at 2.

In our system of notice pleading, it is the facts, not the legal theories, that matter.[3]  But in an abundance of caution, and in light of recent rulings by this Court regarding the applicable statute of limitations to at least some of CUNA Mutual's claims against the JP Morgan Defendants, CUNA Mutual formally seeks to allege that the JP Morgan Defendants committed intentional fraud.

Specifically, this Court recently held that rescission claims based on negligent or strict misrepresentations are governed by the statute of limitations for "[a]n action upon any contract," Wis. Stat. Ann. § 893.43, while claims for intentional misrepresentation are governed by the fraud statute.  *See*, *e.g.*, *CMFG Life Ins. Co. v. UBS Sec.*, No. 13-cv-576-wmc, 2014 WL 2986472, at *5-6 n.13 (W.D. Wis. July 2, 2014).[4]  For the reasons stated in its opposition to the JP Morgan Defendants' motion to dismiss, CUNA Mutual believes that the Court should apply the fraud statute of limitations to all its current claims.  In light of the Court's ruling, however, CUNA Mutual seeks leave to amend its complaint to buttress further what the facts already pleaded demonstrate:  that the JP Morgan Defendants intentionally misrepresented the quality of the loans they securitized and sold to CUNA Mutual.

At this early stage of litigation—before discovery has commenced—courts routinely grant motions to amend the pleadings.  And the proposed amendment will not prejudice the JP Morgan Defendants, as the current complaint already placed them on notice that CUNA Mutual's claims

---

[3] *See Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) ("Having specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint.") (internal quotations omitted); *Alden Mgmt. Servs., Inc. v. Chao,* 532 F.3d 578, 582 (7th Cir. 2008) ("Courts don't hold a party to its first legal theory."); *Bartholet v. Reishauer A.G. (Zürich),* 953 F.2d 1073, 1078 (7th Cir. 1992) ("Instead of asking whether the complaint points to the appropriate statute [or legal theory], a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations."); *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 973 F. Supp. 2d 839, 840 (N.D. Ill. 2013) ("[T]he federal pleading system deals in *claims*, not in the state law concept of 'causes of action.'"); *Carl A. Haas Auto. Imports, Inc. v. Lola Cars Ltd.*, 933 F. Supp. 1381, 1384 n.2 (N.D. Ill. 1996) ( "[Plaintiff's] purely voluntary and nondeterminative choice to structure its Complaint in terms of . . . separate counts in no way limits it to those . . . specific legal theories.") (citation omitted).

[4] The Court requested more briefing on whether the same statute of limitations applies to claims for rescission on the grounds of mistake and for unjust enrichment.  *See* ECF No. 38, at 2-3 (filed July 2, 2014).

were based on their fraudulent behavior.  In the amendment, CUNA Mutual seeks to add only a few

additional allegations and remove the prior allegation that CUNA Mutual is not specifically alleging

fraud.  CUNA Mutual does not seek to change its legal theory—it will still assert the same claim for

contractual rescission, with the same elements except for the one additional allegation:  that the JP

Morgan Defendants' fraud was intentional.

Justice requires that CUNA Mutual be granted leave to amend.  CUNA Mutual alleges that

the JP Morgan Defendants engaged in systematic fraud that infected every offering they sold to

CUNA Mutual.  It would be unjust to forbid CUNA Mutual from proceeding on a substantial

portion of its case, particularly when CUNA Mutual has already pleaded detailed facts supporting an

inference of intentional fraud.  Thus, CUNA Mutual respectfully requests leave to amend its

complaint specifically to add allegations of intentional fraud.

## RELEVANT BACKGROUND

The JP Morgan Defendants moved to dismiss CUNA Mutual's complaint on November 8,

2013, arguing that the Wisconsin contract statute of limitations, Wis. Stat. Ann. § 893.43, barred

CUNA Mutual's claims because—unlike the fraud statute—it contains no discovery rule.  *See* ECF

No. 16, at 4.  In related actions filed concurrently, other investment banks made similar timeliness

arguments.[5]  This Court adopted the same reasoning in this and those cases in applying the contract

statute of limitations to CUNA Mutual's claim for contractual rescission based on negligent or strict

misrepresentations.  *See, e.g., CMFG Life Ins. Co. v. UBS Sec.*, No. 13-cv-576-wmc, 2014 WL 2986472

---

[5] Before the concurrent actions were filed, CUNA Mutual filed a similar suit against RBS
Securities, Inc. in this Court.  In that case, the parties agreed that Wisconsin's statute of limitations
for fraud applied.  *See CMFG Life Ins. Co. v. RBS Sec. Inc.*, No. 12-cv-037-wmc, 2013 WL 4483068, at
*3 (W.D. Wis. Aug. 19, 2013).  On August 19, 2013, this Court denied RBS's motion to dismiss
CUNA Mutual's rescission claim (among other rulings).  *Id.* at *12-13.  Applying the fraud statute's
discovery rule, the Court deemed all of CUNA Mutual's rescission claims timely, reasoning that "it is
one thing to know that the securities were not making their expected returns, or had even lost long
term value in the eyes of investors, and quite another entirely to have cause to suspect that RBS had
materially misrepresented the characteristics of the collateralized loans and its own due diligence."
*Id.* at *4.  Judgment has since been entered in the RBS case.

(W.D. Wis. July 2, 2014); ECF No. 38.

The Court interpreted "(admittedly) tangled and arguably inconsistent law" to hold that, under Wisconsin law, claims for rescission based on unintentional misrepresentation are governed by the Wisconsin contract statute, which runs from the time of "breach" regardless of whether the aggrieved party knew or had reason to know of the breach. *UBS*, 2014 WL 2986472, at *1, *5; ECF No. 38, at 3 (adopting the rationale in *UBS*). But, in so holding, the Court acknowledged that CUNA Mutual's claim for rescission would be governed by the fraud statute of limitations if CUNA Mutual could adequately plead a claim for rescission based on *intentional* misrepresentations. *UBS*, 2014 WL 2986472, at *6 n.13. Moreover, the Court noted that such a claim would not run afoul of the economic loss doctrine because it would still seek a remedy permitted by contract law, despite being ground on fraud. *Id.* at *1, *6 n.13. For these reasons, CUNA Mutual seeks to add a specific allegation of intentional fraud to its complaint against the JP Morgan Defendants.

CUNA Mutual already pleaded myriad allegations supporting an intentional fraud claim, including the following:

- The JP Morgan Defendants hired a professional third-party underwriting firm—Clayton Holdings—to re-underwrite a random sample of the securitization loan pools to ensure that the loans complied with underwriting guidelines or had sufficient compensating factors to justify the credit decision (ECF 1, at ¶¶ 553-554, 558);

- The re-underwriting routinely revealed that a significant amount of loans in the random sample were materially defective (known as "Event 3" loans), meaning that the loans did not comply with underwriting guidelines and were without sufficient compensating factors to justify the loan (*Id.* ¶¶ 557-561);

- Despite this knowledge, the JP Morgan Defendants routinely ordered that the defective loans be "waived" into the pools, which were then securitized; in fact, Clayton's data revealed that J.P. Morgan waived in *51%* of the loans found to be materially defective, and Bear Stearns and Washington Mutual each waived in *29%* of the loans found to be materially defective. And for certain affiliates and certain periods of time, the amount of materially defective loans waived in by the JP Morgan Defendants was even greater. For example, in Q1 2006 alone, Washington Mutual

4

waived in *83%* of the loans that Clayton had classified as materially defective (*Id.* ¶¶ 561-564);

- After learning of these re-underwriting results, the JP Morgan Defendants made misrepresentations in the Offering Documents that the loans complied with underwriting guidelines despite their affirmative decision to include the materially defective loans in the final loan pools backing the RMBS sold to investors, including CUNA Mutual (*Id.* ¶¶ 54-55, 565);

- The JP Morgan Defendants "knew and understood" that CUNA Mutual entered into the RMBS transactions based on the understanding and expectation that the loans were originated in compliance with underwriting guidelines (*Id.* ¶ 52);

- The JP Morgan Defendants routinely securitized loans despite having knowledge through automated valuation models ("AVMs") that the appraisals were inflated, rendering false their disclosures as to the loan-to-value ratios ("LTVs") of the loans (*Id.* ¶ 571).

While these previously pleaded, particularized facts support a fraud claim, and CUNA Mutual even characterized intentional fraud as "likely," in its original complaint CUNA Mutual stated that it was not "specifically alleging that Defendants committed fraud," because "Defendants' misrepresentations are actionable even if negligently or innocently made." *Id.* ¶ 129. At the time of the original complaint, CUNA Mutual had no reason specifically to plead the additional element of intent, because intent was not a necessary element of its rescission claim. Moreover, the Defendant in *RBS* had effectively conceded, by failing to argue to the contrary, that the fraud statute of limitations, Wis. Stat. Ann. § 893.93(1)(b), applied to CUNA Mutual's claims. Given the Court's recent rulings, however, CUNA Mutual now seeks to make clear that it *is* pleading a fraud claim, and it seeks to add additional allegations related to intent:

- Despite knowing, based on random samples of loan pools evaluated by Clayton, that the unsampled portion of the loan pools likely had high rates of defective loans, Defendants intentionally failed to re-underwrite the bulk of the loan pools to identify and eliminate these defective loans. "[E]ven though the Event 3 rate in the random samples [of loan pools] indicated that the un-sampled portion of a pool likely contained additional loans with exceptions, JPMorgan purchased and securitized the loan pools without reviewing and eliminating those loans from the un-sampled portions of the pools." [Annex I to JP Morgan Settlement Agreement, Statement of Facts] at 4-5.

5

- In addition, as acknowledged by J.P. Morgan in the Statement of Facts issued by the Department of Justice, from January 2006 through September 2007, "JPMorgan's due diligence vendors graded numerous loans in the [due diligence] samples as Event 3's, meaning that, in the vendors' judgment, they neither complied with the originators' underwriting guidelines nor had sufficient compensating factors, including in many instances because of missing documentation such as appraisals, or proof of income, employment or assets." *Id.* at 4. Various significant exceptions were identified by the due diligence vendors, including Clayton, and "[t]he vendors communicated this information to certain JPMorgan employees." *Id.* In response to this information, J.P. Morgan due diligence employees "directed that a number of the uncured Event 3 loans be 'waived' into the pools facilitating the purchase of loan pools, which then went into JPMorgan inventory for securitization," including by ordering "'bulk' waivers by directing vendors to override certain exceptions the JPMorgan due diligence managers deemed acceptable across all Event 3 loans with the same exceptions in a pool, without analyzing these loans on a case-by-case basis." *Id.* Such bulk waivers were often directed by J.P. Morgan due diligence managers "shortly before closing the purchase of a pool." *Id.*

- J.P. Morgan has also admitted that it did not heed concerns raised by its own employees about loans purchased that should not be securitized and did not disclose the internal concerns raised by its own employees to J.P. Morgan Managing Directors to investors. *Id.* at 6.

- In addition, Bear Stearns admitted to purchasing loans for securitization even where its due diligence managers and other employees knew that the loans had not been originated in accordance with applicable underwriting guidelines and did not have adequate compensating factors. *Id.* at 9-10.

- WaMu, as well, failed to disclose to investors "in written offering materials the information from its internal reviews concerning instances of borrower fraud and misrepresentations regarding borrower credit, compliance, and property valuation, in the origination of loans, including as to loans that were sold into securitizations." *Id.* at 10. WaMu similarly "did not disclose to investors information regarding instances of fraudulent and/or poor underwriting by certain non-WaMu loan originators who sold loans to WaMu," as well as information about ineffective internal processes and controls and systems and data issues that led to delinquent loans being included in pools that were securitized in RMBS offerings. *Id.* at 10-11.

## ARGUMENT

A party seeking to amend a complaint more than 21 days after the filing of a motion to dismiss must move for leave to file the amended complaint, unless the adverse party consents to the amendment. Fed. R. Civ. P. 15(a). Leave to amend, however, "should [be] freely give[n] . . . when

6

justice so requires." *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (presumption in favor of allowing amendment is a "mandate . . . to be heeded").  In deciding whether to grant leave to amend, courts consider several factors, including whether the opposing party will suffer undue prejudice as a result of the amendment; whether the moving party has delayed unduly or has acted in bad faith; and whether the amendment is futile. *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004).

None of these factors counsels in favor of denying CUNA Mutual leave to file its amended complaint.  The JP Morgan Defendants will suffer no prejudice as a result of the amendment; CUNA Mutual has sought leave to amend diligently and in good faith; and the amendment CUNA Mutual seeks is far from futile because courts have upheld fraud claims against Defendants based on similar facts.

### A.   Defendants Will Suffer No Prejudice Because Discovery Has Not Yet Begun and CUNA Mutual Already Placed Defendants on Notice of Facts Supporting Intentional Fraud.

Defendants will suffer no prejudice as a result of CUNA Mutual's amendment.  This case is still in its infancy, as discovery has not yet begun.  On December 17, 2013, Defendants moved to stay discovery (ECF No. 25), which operated as an informal discovery stay until ruled upon by the Court.  On July 2, 2014, the Court denied the discovery stay as moot.  ECF No. 38, at 2 n.1.  Thus, to date no discovery has taken place, so the addition of a handful of facts and a new conclusion cannot possibly prejudice any Defendants.

The foundational facts supporting an intentional fraud claim are already in CUNA Mutual's complaint.  Moreover, CUNA Mutual does not seek to allege a new legal claim—it continues to pursue a claim for contractual rescission based on misrepresentations.  The proposed complaint merely adds a few additional facts and an additional *conclusion*, a conclusion that the current complaint already compels—that the JP Morgan Defendants knowingly, or in reckless disregard of

the truth, misrepresented the characteristics of the collateral backing the certificates they sold

CUNA Mutual.  *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (abuse of discretion to

deny motion based on undue delay when "[t]here was no new theory of relief, but only a clarification

. . . and a showing of additional factual details").

**B.    CUNA Mutual Is Acting Diligently and in Good Faith.**

CUNA Mutual has acted expeditiously to amend its complaint in response to this Court's

recent rulings regarding the statute of limitations applicable to its claims.  In that regard, this case is

similar to *Issen v. GSC Enterprises, Inc.*, 522 F. Supp. 390 (N.D. Ill. 1981).  There, the plaintiff moved to

amend his complaint for securities fraud to include an element of scienter, which—after the plaintiff

filed suit and the deadline to amend the pleadings had expired—the Supreme Court held was a

necessary element of the claim.  *Id.* at 393-94.  In granting leave, the court held that the amendment

was warranted by the new ruling and the relatively minor impact of adding scienter to the case:

> The amendment does not contain an entirely new claim or theory nor should it entail
> a substantial amount of additional discovery, if indeed it generates any additional
> discovery at all.  The primary reason for the amendment is to take account of
> developments in federal securities law since the case was originally docketed and to
> formally plead issues that the parties have implicitly acknowledged to be part of this
> case for some time.

*Id.* at 394.

Here, just as in *Issen*, CUNA Mutual seeks specifically to allege intentional fraud to account

for developments in the law regarding the applicable statute of limitations.  While this Court's recent

statute of limitations rulings may not, strictly speaking, constitute a "change" in the law, they

addressed a point that no federal or state Wisconsin court appears previously to have addressed, and

required interpretation of an "(admittedly) tangled and arguably inconsistent" area of the law.   *UBS*,

2014 WL 2986472, at *5.  Moreover, CUNA Mutual's original complaint was filed after the Court's

decision in *RBS*, where the defendant conceded that the fraud statute of limitations governed CUNA

Mutual's claims for rescission.  Had CUNA Mutual anticipated when it filed its complaint that the

8

Court might apply different statutes of limitations to claims for contractual rescission depending on whether they were predicated on intentional, negligent, or strict misrepresentation, CUNA Mutual would have alleged intentional fraud with particularity then.  As soon as these issues crystallized, CUNA Mutual brought this motion—diligently and in good faith.

**C.      CUNA Mutual's Amendment Is Not Futile.**

CUNA Mutual has sufficiently pleaded a claim for rescission based on intentional fraud, and the proposed amended complaint buttresses the existing complaint with more allegations of fraud. The complete elements for intentional fraud are:

> 1) the defendant made a factual representation; 2) which was untrue; 3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; 4) the defendant made the representation with intent to defraud and to induce another to act upon it; and 5) the plaintiff believed the statement to be true and relied on it to his/her detriment.

*Kaloti Enters., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 211 (Wis. 2005) (internal quotations omitted).

Under Rule 9(b) of the Federal Rules of Civil Procedure, claims for intentional fraud must include allegations that "state with particularity the circumstances constituting" fraud.  Fed. R. Civ. P. 9(b).  The particularity requirement is met where a plaintiff pleads the "'who, what, when, and where'" of the alleged fraud.  *First Years, Inc. v. Munchkin, Inc.*, No. 3:07-cv-00558-bbc, 2008 WL 4682553, at *2 (W.D. Wis. Feb. 5, 2008) (quoting *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)).  The requisite mental states—intent, knowledge, or recklessness—may, on the other hand, be alleged "generally."  Fed. R. Civ. P. 9(b).  Courts have interpreted "generally" to mean " 'in a conclusory fashion.'"  *Riley v. Vilsack*, 665 F. Supp. 2d 994, 1001 (W.D. Wis. 2009) (quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)); *see also First Years*, 2008 WL 4682553, at *3 (holding that, if a counterclaim is amended to allege intent, "no 'evidence' is required at this point").

CUNA Mutual's particularized 154-page complaint already contains the "who, what, when, and where" of Defendants' misrepresentations.  Indeed, it contains detailed allegations about

compliance with underwriting guidelines and Defendants' due diligence process on a deal-by-deal

basis.  ECF No. 1, at ¶¶ 180-407.

The complaint, moreover, contains numerous, detailed, and compelling allegations

establishing Defendants' intent to mislead.  They include the facts that each of the Defendants hired

a re-underwriting service—Clayton—to re-underwrite random samples of the securitization pools to

ensure the loans materially complied with guidelines; that each Defendant identified a significant

amount of loans that were "Event 3" loans, meaning they violated underwriting guidelines and

lacked sufficient compensating factors; that each Defendant ordered on an aggregate basis that up to

51% of those loans be "waived" into the securitization pools; that, even after knowing of these re-

underwriting results, the Defendants misrepresented in the Offering Documents that the loans

complied with underwriting guidelines; and that Defendants knew via AVMs that the LTVs of the

loans were often falsely inflated.  ECF No. 1, at ¶¶ 52,54-55, 553-565, 571.  As described above in

detail, CUNA Mutual's proposed amended complaint supplements these facts with additional

allegations demonstrating the JP Morgan Defendants' intent.

On similar facts, courts have held plaintiffs sufficiently pleaded fraud against these very same

Defendants.  For example, in *Dexia SA/NV v. Bear, Stearns & Co.*, 929 F. Supp. 2d 231 (S.D.N.Y.

2013), allegations that Defendant Bear Stearns instructed Clayton to waive materially defective loans

into the securitization pools supported a claim for intentional fraud:

> The Amended Complaint also pleads facts suggesting defendants knew that the
> certificates were backed by loans originated in violation of the stated underwriting
> guidelines, including loans that the defendants themselves "waived in" despite their
> nonconformity, and that the appraisals were not conducted according to industry
> standards, even if the defendants themselves were not the originators of the loans.
> "Under such circumstances, defendants knew or, more importantly, should have
> known that they were misrepresenting material facts . . . ." *S.E.C. v. Mudd*, 885
> F.Supp.2d 654, 667 (S.D.N.Y.2012). . . .  Thus, the Court finds that plaintiffs have
> adequately pleaded that they have suffered damages arising from defendants' alleged
> fraud.

*Id.* at 242-44 (citation omitted; alterations in original).

Similarly, in *Federal Housing Finance Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476 (S.D.N.Y. 2012), allegations that Clayton informed Defendant JPMorgan that 27% of the loans in its securitization pools were Event 3s—*i.e.*, outside of guidelines and without sufficient compensating factors—and that JPMorgan nevertheless waived 51% of those loans into the pools, supported a claim for intentional fraud: "It can hardly be disputed that, taken together, the allegations above adequately plead that JPMorgan acted with fraudulent intent in misrepresenting the underwriting standards that governed the Supporting Loans." *Id.* at 492-93. *See also Phoenix Light SF Ltd. v. ACE Sec. Corp.*, 975 N.Y.S.2d 369, at \*7 (N.Y. Sup. Ct. Apr. 24, 2013) ("In sum, the allegations that Deutsche Bank made false representations in the RMBS offering materials that flatly contradict the reality depicted in Clayton's report to induce plaintiffs to purchase RMBS are sufficient to state a claim for fraud and fraudulent inducement.").

Similar complaints alleging common-law fraud against Morgan Stanley have also been affirmed. *See Deutsche Zentralgenossenschaftsbank AG v. Morgan Stanley*, No. 654035/2012 (N.Y. Sup. Ct. June 10, 2014) (attached as Ex. C); *Bank Hapoalim B.M. v. Morgan Stanley*, No. 653036/2012 (N.Y. Sup. Ct. Apr. 22, 2014) (attached as Ex. D); *Metropolitan Life Ins. Co. v. Morgan Stanley*, No. 651360/2012, 2013 N.Y. Misc. LEXIS 3056, (N.Y. Sup. Ct. Mar. 13, 2013). The *Metropolitan Life* complaint alleged that "Morgan Stanley knew about and ignored deficiencies in the underlying loans [and] deliberately manipulated the due diligence process to conceal deficiencies in the loans," which sufficiently supported a finding of scienter. *Metropolitan Life Ins.*, 2013 N.Y. Misc. LEXIS 3056 at \*34-35. The court found that, "[i]n a case involving RMBS, 'the allegations of the mortgage loans' material and pervasive non-compliance with the Seller's underwriting Guide and the mortgage loan representations are sufficient non-compliance from which Defendant's scienter can be inferred.'" *Id.* at 33 (citations omitted).

Similarly, in *Bank Hapoalim*, allegations that Morgan Stanley falsely represented in offering documents that loans conformed to underwriting guidelines sufficiently supported a fraud claim. Ex. D at 44.  Morgan Stanley claimed that the complaint did not support scienter, but the court stated that this "ignore[d] the role of the Morgan Stanley entities in the securitizations." *Id.*  Thus, "inferences as to Morgan Stanley's knowledge as to both its own and outside originators['] violations of underwriting standards may reasonably be drawn" because of the alleged "pervasiveness of the violations." *Id.*; *see also Deutsche Zentralgenossenschaftsbank AG*, Ex. C at 39 (allegations of misstated LTV ratios, owner occupancy levels, compliance with underwriting standards, credit ratings, etc., "adequately plead actionable material misrepresentations that support the fraud cause of action"); *cf. Assured Guar. Mun. Corp. v. RBS Sec., Inc.*, No. 1:13-cv-02019 (S.D.N.Y. Mar. 26, 2014) (attached as Ex. E) (allegations of RBS waiving in defective loans identified by Clayton and longstanding dealings with originators supported fraud claim).

The facts supporting intentional fraud in CUNA Mutual's Amended Complaint are at least as strong.  Therefore, CUNA Mutual can sufficiently plead (and has sufficiently pleaded) a claim for rescission based on intentional misrepresentations, and its requested relief is not futile.[6]

CUNA Mutual's claim for rescission on the grounds of intentional misrepresentation is also not barred by any statute of limitations that could conceivably apply.  As this Court recently held, such claims are governed by the Wisconsin fraud statute of limitations, Wis. Stat. Ann. § 893.93(1)(b). *See UBS*, 2014 WL 298642, at *6 n.13.  That statute allows a plaintiff the benefit of the discovery rule plus six years. *See RBS*, 2013 WL 4483068, at *4.  Because the discovery rule applies, there is, at the very least, a disputed issue of fact as to when CUNA Mutual's claims accrued, which cannot be resolved at this stage of the litigation.

---

[6] Nor does the economic loss doctrine bar CUNA Mutual's claims.  CUNA Mutual has not  changed its legal theory—it still seeks contractual rescission, which the Court has recognized does not trigger the economic loss doctrine, even if based on intentional misrepresentations. *See UBS*,  2014 WL 2986472, at *1, *6 n.13.

## CONCLUSION

CUNA Mutual respectfully requests it be granted leave to amend its complaint specifically to assert a claim for rescission on the ground of intentional misrepresentation.

DATE:  July 30, 2014

*/s/ Silvija A. Strikis*
David C. Frederick (*pro hac vice*)
Silvija A. Strikis (*pro hac vice*)
Scott K. Attaway (*pro hac vice*)
**Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dfrederick@khhte.com
sstrikis@khhte.com
sattaway@khhte.com

Greg G. Gutzler
Tamara M. Spicer
Steven M. Berezney
Michael E. Klenov
John C. Craig
Garrett R. Broshuis
**Korein Tillery, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844
ggutzler@koreintillery.com
tspicer@koreintillery.com
sberezney@koreintillery.com
mklenov@koreintillery.com
jcraig@koreintillery.com
gbroshuis@koreintillery.com

George A. Zelcs (*pro hac vice*)
**Korein Tillery, LLC**
205 North Michigan, Suite 1950
Chicago, IL 60601
(312) 641-9750
gzelcs@koreintillery.com

Peggy A. Lautenschlager
**Bauer & Bach, LLC**
123 East Main Street, Suite 300
Madison, WI 53703
(608) 260-0292

13

lautenschlager@bauer-bach.com

***Counsel for Plaintiffs***