IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

CMFG LIFE INSURANCE COMPANY,
MEMBERS LIFE INSURANCE COMPANY
and CUMIS INSURANCE SOCIETY,

                Plaintiffs,                OPINION & ORDER

    v.                                                 13-cv-580-wmc

J.P. MORGAN SECURITIES, LLC,
BEAR, STEARNS & CO., WAMU CAPITAL
CORP. and J.P. MORGAN CHASE BANK, N.A.,

                Defendants.
---

      This case is one of several brought by plaintiffs CMFG Life Insurance Company, CUMIS Insurance Society and MEMBERS Life Insurance Company (collectively, "CUNA Mutual"), all of which seek contractual rescission of purchases of residential mortgage-backed securities, or "RMBS," on the grounds of misrepresentation and mistake, as well as an alternative claim for unjust enrichment. Previously, CUNA Mutual premised its claims for rescission on alleged material misrepresentations by defendants but did not specifically allege that those misrepresentations were fraudulent. Defendants moved to dismiss the claims as time-barred, arguing that Wisconsin's six-year statute of limitations governing actions "upon contract," Wis. Stat. § 893.43, applied to those claims. CUNA Mutual, on the other hand, contended that its claims were governed by the statute of limitations for "[a]n action for relief on the ground of fraud" contained in Wis. Stat. § 893.93(1)(b), which governs -- unlike Wis. Stat. § 893.43 -- specifically provides for the application of a discovery rule.

On July 1, 2014, the court held in a parallel case, *CMFG Life Insurance Company v. UBS Securities, LLC*, 30 F. Supp. 3d 822 (W.D. Wis. 2014), that CUNA Mutual had pled only claims for rescission based on negligent or strict liability misrepresentation and that such claims were governed by, and time-barred under, the contract statute of limitations. The court found that the rescission claims premised on mistake and the unjust enrichment claims were similarly time barred. The next day, the court held that the logic of *UBS Securities* applied with equal force to bar CUNA Mutual's claims in the present case. (July 2, 2014 Opinion & Order (dkt. #38) 3.) However, noting that defendants had not briefed the question of whether Wis. Stat. § 893.43 applied with equal force to the mistake-based and unjust enrichment claims, the court set a short briefing schedule on that question. (*Id.*) Eschewing the opportunity to brief that question, CUNA Mutual instead filed a motion to amend its complaint on July 30, 2014, seeking to add claims for rescission premised on intentional (that is, fraudulent) misrepresentation. (Dkt. #43.) In light of the proposed amended complaint, the court granted the remainder of defendants' original motion to dismiss. (Aug. 8, 2014 Order (dkt. #50).) For the reasons that follow, the court will grant CUNA Mutual's motion to amend the complaint, while denying its later-filed motion to stay.

## MOTION TO STAY

CUNA Mutual first moved to stay this action pending an appeal in one of the similar cases, *CMFG Life Insurance Company v. RBS Securities, Inc.*, No. 12-cv-037-wmc, 2014 WL 3696233 (W.D. Wis. July 23, 2014), *appeal docketed*, No. 14-2904 (7th Cir. Aug. 28, 2014) [hereinafter *RBS I*]. CUNA Mutual anticipates that this appeal will resolve issues that

"bear directly" on those at issue here, including the statute of limitations, the legal standard concerning alleged misrepresentations by a securities underwriter, issues of reliance and the question of an underwriter's responsibility for statements in securities offering documents. Defendants opposes the stay, arguing that the only issue currently before this court is whether CUNA Mutual may amend its complaint to add claims of intentional misrepresentation -- a question that will not be affected by the *RBS* appeal, since it implicates issues not raised in that action.

When deciding whether to stay an action, the court must "balance interests favoring a stay against interests frustrated by the action in light of the court's strict duty to exercise jurisdiction in a timely manner." *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (quoting *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (internal quotation marks omitted)). In conducting that balancing test, courts frequently consider: (1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the court.

CUNA Mutual has not demonstrated the circumstances warrant a stay pending the *RBS I* appeal. For example, the pending motion to amend primarily involves a fact-intensive inquiry into the claims here -- whether CUNA Mutual was on notice of its claims, or at least had a duty of inquiry, sufficiently soon that they are time-barred under any applicable statute of limitations. Similarly, that motion requires an inquiry as to whether CUNA Mutual has failed to plead any misrepresentations by defendants with particularity.

Delaying resolution of these threshold questions serves no purpose, because the *RBS I* appeal will not directly affect the court's analysis on either issue.

The court has no doubt that, as CUNA Mutual contends, the eventual decision in the *RBS Securities* appeal will provide helpful guidance to the court with respect to CUNA Mutual's claims for rescission in this action, which closely mirror those it asserted in *RBS Securities*. But the court is not persuaded that a stay is presently necessary. On the contrary, given the early stage of this litigation and oral argument having already been heard on appeal in *RBS I*, the Seventh Circuit's decision will have issued before many of the overlapping issues arise in this matter. No purpose would be served, therefore, by further delaying a decision on the pending motions, other than preventing this matter from progressing toward trial.

The court is certainly willing to reconsider CUNA Mutual's request for a stay if: (1) an issue arises that will likely be directly affected by the *RBS* decision; *and* (2) that decision has not yet issued. On such an issue, the Seventh Circuit's guidance might streamline the parties' disputes and reduce the burdens of litigation on them and the court. But at present, CUNA Mutual has not demonstrated that a stay is warranted, and so the court will deny the motion.

## MOTION TO AMEND

A court should "freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This means that "[i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to

4

the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**I.   Statute of Limitations**

Like the other rescission claims, defendants first argue that CUNA Mutual's claims for rescission on the grounds of intentional misrepresentation are governed by Wis. Stat. § 893.43.  They argue that because a claim for rescission is a contract claim at its core, and the Wisconsin Supreme Court has rejected the application of the discovery rule to contract claims, *see CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp.*, 174 Wis. 2d 604, 497 N.W.2d 115 (1993), CUNA Mutual cannot benefit from the statute of limitations contained in Wis. Stat. § 893.93(1)(b).  For substantially the same reasons articulated in this court's opinion issued today in *CMFG Life Insurance Company v. Credit Suisse Securities (USA) LLC*, No. 14-cv-249-wmc, the court will reject this argument.

For its part, CUNA Mutual argues that the court incorrectly determined in *UBS Securities* that Wisconsin's statute of limitations for "[a]n action upon any contract, obligation or liability," Wis. Stat. § 893.43, governs rescission claims predicated on strict liability or negligent misrepresentations.  Instead, CUNA Mutual would distinguish under Wisconsin case law between actions for relief *upon* a contract and actions to *disclaim* a contract, citing cases like *Tyler v. Schoenherr*, 344 Wis. 2d 124 (table), 2012 WL 2847917 (Wis. App. July 12, 2012).  However, CUNA Mutual first asserted that Wis. Stat. § 893.43 does not apply to *any* claims for rescission in its reply brief.  Arguments first raised in a reply brief are, of course, not properly before the court for consideration.  *United States v. Turner*,

203 F.3d 1010, 1019 (7th Cir. 2000); *Sunbeam Prods., Inc. v. Homedics, Inc.*, 587 F. Supp. 2d 1055, 1058 (W.D. Wis. 2008).

Absent contrary guidance from the Wisconsin Supreme Court or the Seventh Circuit, the court is also not persuaded that there is support in case law for CUNA Mutual's technical distinction between actions *upon* contracts and actions to *rescind* contracts. Certainly, the cases CUNA Mutual cites do distinguish between the two, but only in the context of noting that parties who discover actionable fraud have the option to elect their remedy: they may rescind, or they may ratify and "sue upon" the contract. *See, e.g.*, *Am. Steel Foundries v. Laughlin*, 30 F.2d 139, 142 (7th Cir. 1928); *Schlotthauer v. Krenzelok*, 274 Wis. 1, 79 N.W.2d 76 (1956). None of the cases cited by CUNA Mutual suggest that Wis. Stat. § 893.43 is meant only to apply to actions in which the party elects the latter remedy. *See Credit Suisse*, No. 14-cv-249, at 11.

Defendants also argue that CUNA Mutual's claims for rescission would be barred even under Wis. Stat. § 893.93(1)(b), which sets the statute of limitations at six years from the date of "the discovery, by the aggrieved party, of the facts constituting the fraud." Preliminarily, the parties dispute the operative date. CUNA Mutual seeks to use the date of its original pleadings, August 15, 2013, meaning that its claims are timely if discovered on or after August 15, 2007. Defendants contend that because this court held the original complaint to be untimely, the operative date is the date of the motion to amend -- July 30, 2014 -- meaning that CUNA Mutual's claims are timely if discovered on or after July 30, 2008.

Federal Rule of Civil Procedure 15(c) provides that an amendment to a pleading relates back to the date of the original pleading when, among other things, "the amendment

6

asserts a claim or defense that arose out of the conduct, transaction or occurrence set out -- or attempted to be set out -- in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). "However, in order to benefit from Rule 15(c)'s relation back doctrine, the original complaint must have been timely filed." *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001). This court previously concluded that CUNA Mutual's original complaint was untimely under Wis. Stat. § 893.43, meaning that Rule 15(c)(1)(B) would not apply. "That does not end the inquiry, however, because Rule 15(c) provides that relation back is allowed if it is permitted by the state law that provides the applicable statute of limitations[.]" *Henderson*, 253 F.3d at 932. "The rationale is that if state law 'affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim.'" *Id.* (quoting Fed. R. Civ. P. 15(C)(1), cmt. to 1991 Amendment).

Wisconsin's relation-back statute is contained at Wis. Stat. § 802.09(3), which provides:

> If the claim asserted in the amended pleading arose out of the transaction, occurrence, or event set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the filing of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against such party, the party to be brought in by amendment has received such notice of the institution of the action that he or she will not be prejudiced in maintaining a defense on the merits, and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against such party.

Relying on the first sentence in § 802.09(3), which sets forth the general test for whether a pleading relates back without expressly requiring that the original action be timely filed, CUNA Mutual argues that the court should read no such requirement into the statute.

7

Case law actually *addressing* this issue, however, is sparse, and language in some Wisconsin cases suggests (although, admittedly, does not conclusively hold) that Rule 15(c)'s requirement that the original complaint be timely applies with equal force in analyzing Wis. Stat. § 802.09.  *See, e.g., Tews v. NHI, LLC*, 2010 WI 137, ¶ 63, 330 Wis. 2d 389, 793 N.W.2d 860 ("Wisconsin's relation-back statute is very nearly identical to Rule 15(c) of the Federal Rules of Civil Procedure."); *Lavine ex rel. Ladd v. Hartford Accident & Indem. Co.*, 140 Wis. 2d 434, 443, 410 N.W.2d 623 (Ct. App. 1987) ("[T]he relation back statute has been applied to enable a plaintiff, *after having timely commenced an action*, to change a party, correct mistakes in naming defendants, and to plead theories connected with the original cause of action but not included in original pleadings.") (emphasis added).  In parallel RMBS litigation, however, Judge Randa recently found that CUNA Mutual's claims for intentional misrepresentation *do* relate back to the original complaint under Wisconsin law, although it is not clear whether this particular issue was raised.  (*See CMFG Life Ins. Co. v. Morgan Stanley & Co., LLC*, No. 13-C-577 (dkt. #55-1) 4.)  This court reaches the same conclusion here, at least where plaintiff attempted to plead a viable claim from the outset of suit.

"[T]he statute of limitations may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).  With a statute of limitations that provides a straightforward cutoff, like Wis. Stat. § 893.43, finding a claim time-barred at the motion to dismiss stage is a simpler matter than a statute of limitations providing for a discovery rule, like Wis. Stat. § 893.93(1)(b).  The latter requires "a fact-intensive inquiry and, thus, [is] generally ill-suited for resolution at the motion to dismiss stage." *In re Bear Stearns Mortg. Pass-Through*

8

*Certificates Litig.*, 851 F. Supp. 2d 746, 763 (S.D.N.Y. 2012); *see also CMFG Life Ins. Co. v. RBS Secs. Inc.*, No. 12-cv-037-wmc, 2013 WL 4483068, at *3-4 (W.D. Wis. Aug. 19, 2013) (applying § 893.93(1)(b) and declining to dismiss on statute of limitations grounds at Rule 12(b)(6) stage) [hereinafter *RBS II*].

Defendants point to the following evidence that CUNA Mutual was under "inquiry notice" of its claims before August 15, 2007:

- Some investors had already sued defendants for fraud in connection with some of the same certificates at issue in this case.

- Various news outlets reported on problems with some of the loans originated by some of the same underwriters who originated the loans underlying the RMBS in this case.

- Eight of the eleven RMBS certificates that CUNA Mutual seeks to rescind suffered rating downgrades before July 30, 2008.

In response, CUNA Mutual argues that the fact-intensive nature of the inquiry requires deferring any resolution of defendants' statute of limitations defense until summary judgment. CUNA Mutual further contends that some of the information it required to launch a plausible lawsuit against defendants was not even available until 2010 -- for example, pointing to the automated valuation models (AVMs) that it used to assess loan-to-value and combined loan-to-value ratios and compare them to the ratios as represented. Its complaint also relies in part on sources that were *not* available before August 15, 2007, including a Financial Crisis Inquiry Commission report issued in January of 2011, which arguably supports its contention of pervasive abandonment of underwriting standards (2d Am. Compl. (dkt. #44-1) ¶ 454); an April 2010 report evaluating defendant WaMu's

underwriting strategies (*id.* at ¶ 495); the Permanent Subcommittee on Investigations ("PSI") Report detailing the collapse of mortgage underwriting standards, using Washington Mutual Bank as a case study (*id.* at ¶¶ 454-55, 496-98); statements from former WaMu underwriters contained in a December 2008 New York Times article (*id.* at ¶¶ 507-09); and the Clayton Trending Report, which details many of *defendants'* alleged practices in waiving through defective loans (*id.* at ¶¶ 555-74).

Certainly, CUNA Mutual may have had a duty of inquiry earlier than alleged, but the court does not believe that is the *only* reasonable inference to be drawn from the amended complaint. Ratings downgrades and documented problems with *loan issuers'* disregard of their standards does not necessarily translate to fraud on the part of *defendants*. Likewise, the court is hesitant to conclude that lawsuits filed by other, unrelated plaintiffs would *necessarily* trigger knowledge on the part of a reasonable plaintiff that it, too, had actionable claims for fraud against the same defendant. Finally, there may be other factors at play that affect the timeliness of CUNA Mutual's complaint, which cannot currently be ascertained from the pleadings. *Cf. RBS I*, 2014 WL 3696233, at *24 (noting that the record was not so one-sided as to show unreasonable delay in bringing suit, "particularly because there is at least a dispute of fact as to whether [defendant] continued to reassure its investors as to the state of the RMBS market"). Defendants are free to attempt to prove, either at summary judgment or at trial, that CUNA Mutual truly was on inquiry notice of its claims early enough to render this lawsuit time-barred. But that issue is best left for resolution on a developed factual record, not on CUNA Mutual's pleadings.

## II. Undue Delay

Defendants next argue that CUNA Mutual should be denied leave to amend based on undue delay. According to defendants, CUNA Mutual could have -- and should have -- moved to amend as soon as it was alerted to the insufficiencies in its pleadings by its motion to dismiss, filed on November 8, 2013. This court has recognized that the law surrounding the asserted statute of limitations defense was tangled and difficult to parse. *UBS Securities*, 30 F. Supp. 3d at 828. In light of cases like *Kindschuh v. City of Fond du Lac*, No. 09-C-214, 2010 WL 1507883, at *5-6 (E.D. Wis. Apr. 14, 2010), which applied § 893.43 even to claims for rescission based on intentional misrepresentation and was cited by defendants, CUNA Mutual did not necessarily have reason to believe that specifically alleging intentional misrepresentation might potentially cure the deficiencies of its complaint *until* the court's order on the motion to dismiss issued. In light of the permissive standard of Rule 15, and given the early stage of this litigation, with trial set for February 1, 2016,[1] the court does not believe that CUNA Mutual has demonstrated undue delay, at least on the pleadings.

## III. Failure to Plead Misrepresentations

Defendants next contend that CUNA Mutual failed to allege that they made *any* misrepresentations, arguing that the alleged representations were made by third parties and merely reported by defendants. As in its parallel lawsuits, CUNA Mutual's alleged

---

[1] That fact makes this case unlike *RBS I*, where the court denied CUNA Mutual leave to amend its claims to allege intentional misrepresentation. In that case, CUNA Mutual did not seek leave to amend until shortly before trial, despite the defendant raising the contract statute of limitations on two separate occasions previously. In light of the posture of the case, and given that CUNA Mutual delayed an additional two weeks *after* receiving the court's decision in *UBS Securities* despite the looming trial date, the court concluded that CUNA Mutual's proposed amendment was "too dramatic a change at too late an hour." 2014 WL 3696233, at *38.

misrepresentations fall into four categories: (1) credit ratings; (2) owner-occupancy status; (3) LTV and CLTV ratios; and (4) compliance with underwriting guidelines. (*See generally* 2d Am. Compl. (dkt. #44-1).)

With respect to credit ratings, this court concluded in *RBS II* that "[a]ny reasonable investor would understand that RBS's citation to a Moody's, S & P or Fitch rating meant only that the agency had issued that rating, not that RBS had independently confirmed the ratings' accuracy through its own due diligence. Furthermore, a reasonable investor could not have confused RBS's assurances of "re-underwriting" with an assurance of the overall accuracy of proprietary credit ratings by these national agencies." 2013 WL 4483068, at *9. CUNA Mutual asks the court to reconsider that conclusion in light of two pieces of authority: (1) a footnote in an SEC rule concluding that distributing a rating agency report represents adoption of that report, *see* Final Rule, Securities Offering Reform, 70 Fed. Reg. 44,722, 44,745 n.211 (Aug. 3, 2005) ("[I]f an issuer or underwriter distributes the rating agency report in connection with an offering of the securities, it is appropriate to conclude that such party has adopted that report and should be liable for its contents."); and (2) *Capital Ventures International v. J.P. Morgan Mortgage Acquisition Corporation*, CIV.A. 12-10085-RWZ, 2013 WL 535320, at *6 (D. Mass. Feb. 13, 2013), which permitted claims to proceed on allegations that defendants provided information to rating agencies "while knowing that the underlying data had been manipulated."

The second piece of authority, at least, is arguably on point. In *Capital Ventures*, the plaintiff alleged that defendants themselves knowingly provided faulty data to ratings agencies and then provided the artificially-inflated ratings to their investors. *Id.* at *5-6. The court permitted the claims to proceed noting that "defendants cannot simply repeat

opinions they know are inaccurate or baseless and then disclaim liability." *Id.* at \*6. Now that CUNA Mutual has alleged defendants knew full well that some of the data they provided to the ratings agencies were inaccurate, the same rule would apply. (*See, e.g.*, 2d Am. Compl. (dkt. #44-1) ¶ 65 (defendants' due diligence included verifying LTV and CLTV ratios); *id.* at ¶ 68 (due diligence including confirming that owner-occupancy status was supported).) This argument hinges on defendants' *knowledge*, which was not at issue in *RBS II*.

This court is also persuaded that this distinction matters and justifies allowing CUNA Mutual to proceed on these claims past the pleadings stage, at least at present. *See also, e.g.*, *In re Bear Stearns*, 851 F. Supp. 2d at 772 ("If Bear Stearns knowingly fed incomplete or inaccurate information to the Rating Agencies . . . the ratings' unqualified reproduction in the Offering Documents would constitute an actionable misrepresentation and omission.").

With respect to owner-occupancy status, defendants rely heavily on the court's summary judgment opinion in *RBS I*, citing this court's statement that CUNA Mutual had failed to point to "any *specific* statements by anyone at RBS that RBS stood behind the accuracy of its owner-occupancy data." 2014 WL 3696233, at \*34 (emphasis in original). But that decision was based on a complete record at summary judgment, after CUNA Mutual failed to offer *any* response to RBS's argument that the offering documents contained disclaimers attributing the data to borrowers themselves, not to RBS. *See id.* ("The court need not belabor this claim because CUNA Mutual appears to have abandoned it entirely."). CUNA Mutual also failed to come forward with any specific statements that RBS stood behind the accuracy of its owner-occupancy data -- or, indeed, any evidence that

the owner-occupancy data itself was actually false. *Id.* at *34-35. Here, that record has not yet been developed.

More importantly, the court believes that the new allegations of defendants' *knowledge* alter the legal landscape with respect to this claim as well. Defendants cannot pass along information they *know* to be false. *Cf. In re Bear Stearns*, 851 F. Supp. 2d at 772. Indeed, the failure to disclose the truth in light of this alleged knowledge may constitute an actionable *omission* -- a theory that is at least cognizable now that defendants have pled intentional misrepresentation. *See RBS I*, 2014 WL 3696233, at *29-30 (discussing Wisconsin law with respect to misrepresentation by nondisclosure); *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶¶ 13, 20, 283 Wis. 2d 555, 699 N.W.2d 205 (misrepresentation by omission claim may lie when party to a business transaction has a duty to disclose a fact).

The same holds true with respect to the other two categories of misrepresentations (LTV/CLTV ratios and compliance with underwriting standards). If defendants *knew* of the falsity of the information they were providing through their documents and failed to make any disclosures with respect to that information, their silence *might* constitute an actionable omission under Wisconsin law, so long as they had a duty to disclose the information under Wisconsin law. *See Kaloti*, 2005 WI 111, ¶ 20; *cf. RBS I*, 2014 WL 3696233, at *30 (alleged ubiquity of compliance with underwriting guideline representations did "not establish a duty to disclose giving rise to a misrepresentation by silence, at least absent an allegation that RBS actually knew of the underwriting guidelines violations and intentionally misrepresented them").

In any event, the court has little detail before it regarding *what* statements, if any, were made in the various offering documents with which defendants provided their investors. Defendants' own briefing on the original motion to dismiss appears to concede that not all the offering documents contain disclaimers with regard to information provided by third parties (Br. Support Mot. Dismiss (dkt. #16) 15), and neither party has briefed the significance, if any, of defendants' alleged knowledge of the falsity of the information it was reporting in those documents.

The court, therefore, concludes that based on its pleadings, CUNA Mutual may proceed with its claims. Although CUNA Mutual undoubtedly has a difficult path to tread in light of all it must prove to succeed, that is not a basis for granting a motion to dismiss under Rule 12(b)(6) -- or denying a motion to amend as futile. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'").

**IV. Failure to Plead Scienter**

Finally, while defendants have no issue with CUNA Mutual's pleading of the "circumstances constituting fraud" -- that is, the "who, what, when, where, and how" *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) -- except as noted above, they do argue that CUNA Mutual's allegations of intent are too general.

Generally, Rule 9(b)'s heightened pleading requirement "does not extend to 'states of mind' which 'may be pleaded generally'" under the text of the rule. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (citing *Robin v. Arthur*

15

*Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990)). Even so, "the complaint must still afford a basis for believing that plaintiffs could prove scienter." *Id.* (quoting *Robin*, 915 F.2d at 1127) (internal quotation marks omitted).

CUNA Mutual has met that standard here, having pled facts regarding defendants' due diligence processes and numerous reports that detail the ways in which defendants knowingly and/or recklessly disregarded their own standards and failed to ensure that their offerings complied with the representations in their own documents. Furthermore, the Clayton Report, as well as a Statement of Facts issued by the Department of Justice, if taken as true, give rise to a reasonable inference that defendants knowingly misrepresented the characteristics of the offered RMBS. Again, defendants are free to argue at summary judgment and trial that this was not, in fact, the case -- but at present, the court must assume these allegations are true. Doing so provides a basis for a reasonable trier of fact to believe CUNA Mutual could prove the requisite intent.[2]

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion to amend the complaint (dkt. #43) is GRANTED IN PART and DENIED IN PART.

---

[2] CUNA Mutual also seeks to revive its claims for rescission on the grounds of mistake and unjust enrichment. (Br. Reply (dkt. #54) 19.) Relying on its improperly-raised argument that *UBS Securities* was incorrectly decided, and that the fraud statute of limitations applies to *all* of its claims, the court need not address that argument further. The possible exception (although CUNA Mutual has not expressly made this argument) would be a claim for rescission based on unilateral mistake, which generally requires fraud on one side and thus might benefit from § 893.93(1)(b). *Sorce v. Rinehart*, 69 Wis. 2d 631, 638, 230 N.W.2d 645 (1975) ("As stated in *Chicago, St. P., M. & O.R. Co. v. Bystrom* (1917), 165 Wis. 125, 133, 161 N.W. 358, 361, '(i)n order to reform a contract on the ground of mistake, the general rule is that the mistake must be mutual, or mistake on one side and fraud on the other.'"). However, assuming such a claim would be viable, it appears duplicative of the claims for rescission based on material *omissions* premised on defendants' failure to disclose information to CUNA Mutual. *See* discussion, *supra*, at 14-15.

2) Defendants' motion for judicial notice (dkt. #53) is GRANTED insofar as the court takes judicial notice only of the existence of the provided documentation, rather than the accuracy of the facts contained therein.

3) Plaintiffs' motion to stay (dkt. #57) is DENIED.

Entered this 5th day of August, 2015.

                            BY THE COURT:

                            /s/

                            _____
                            WILLIAM M. CONLEY
                            District Judge